# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MARK ANTHONY NOONAN,

        Defendant.

No. 12-CR-1016-LRR

**ORDER**

---

### TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.   **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND** . . . . . . . . *1*

III.  **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

IV.  **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    A.   **Basis for Stop** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    B.   **Public Safety Exception** . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
        1.   **Defendant's arguments** . . . . . . . . . . . . . . . . . . . . . . . . *7*
        2.   **Applicable law** . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
        3.   **Discussion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

V.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

### I. INTRODUCTION

The matter before the court is Defendant Mark Anthony Noonan's Objections (docket no. 31) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 27), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 13).

### II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a March 25, 2012 traffic stop. On that date, Dubuque County Deputy Sheriff Joseph L. Kennedy stopped Defendant's vehicle after witnessing

what Deputy Kennedy described as "weird" driving behaviors. Transcript (docket no. 29) at 30. During the course of the stop, Deputy Kennedy learned that there was an outstanding warrant for Defendant's arrest. After he placed Defendant under arrest, Deputy Kennedy searched a bag in Defendant's vehicle and found several items that are used in the manufacture of methamphetamine, including an aspirin bottle containing pseudoephedrine.

On July 18, 2012, the government filed a one-count Indictment (docket no. 2) against Defendant. The Indictment charges Defendant with knowingly and intentionally possessing pseudoephedrine knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine. Such offense is a violation of 21 U.S.C. § 841(c)(2).

On August 22, 2012, Defendant filed the Motion. In the Brief in Support of the Motion (docket no. 13-1), Defendant argues that Deputy Kennedy violated his Fourth, Fifth and Sixth Amendment rights and, consequently, requests that the court suppress all evidence obtained as a result of the March 25, 2012 traffic stop. On August 31, 2012, the government filed a Resistance (docket no. 22). On December 13, 2012, Judge Scoles held a hearing on the Motion. *See* Minute Entry (docket no. 24). Defendant appeared in court with his attorney, Anne Laverty. Assistant United States Attorney Patrick J. Reinert represented the government. On December 20, 2012, Judge Scoles issued the Report and Recommendation, which recommends that the court grant in part and deny in part the Motion. On December 21, 2012, the government filed a Response (docket no. 28) indicating that the government has no objections to the Report and Recommendation. On January 3, 2013, Defendant filed his Objections. The matter is fully submitted and ready for decision.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. ANALYSIS

Defendant objects to a number of Judge Scoles's factual findings and conclusions of law. The court first addresses Defendant's objections relating to the basis for the March 25, 2012 traffic stop. The court then turns to Defendant's objection relating to the public safety exception. Having conducted a de novo review of the record, the court shall overrule Defendant's Objections and adopt Judge Scoles's findings in their entirety.

### A. Basis for Stop

In his Objections, Defendant argues that, in the Report and Recommendation, Judge Scoles incorrectly summarizes Deputy Kennedy's testimony and erroneously finds that Deputy Kennedy had a reasonable suspicion that Defendant was engaged in criminal activity. Specifically, Defendant contends that Judge Scoles incorrectly states that Deputy Kennedy testified that he often encounters drunk drivers at 2:30 a.m. Defendant contends that Deputy Kennedy did not testify regarding "the frequency of stopping drunk drivers on Highway 20 at that hour" and, thus, Judge Scoles "exaggerat[es]" Deputy Kennedy's

testimony by suggesting otherwise.  Objections at 4.  Defendant also argues that Judge

Scoles incorrectly states that Deputy Kennedy's "suspicion was aroused further" when

Defendant made a lefthand turn onto Mile Hill Lane.  *Id.* at 4-5 (quoting Report and

Recommendation at 10).  Rather, Defendant argues that Deputy Kennedy merely testified

that he thought it was "odd" that Defendant would turn onto that street.  *Id.* at 5 (quoting

Transcript at 11).  Next, Defendant argues that Judge Scoles places too much weight on

Deputy Kennedy's testimony that there had been a series of storage shed burglaries in the

Dubuque area.  Defendant further argues that his lawful lefthand turns do not amount to

evasive behavior, as Judge Scoles suggests, and, in any case, "evasive behavior alone does

not constitute reasonable suspicion of criminal activity."  *Id.* at 6.  Finally, Defendant

argues that the facts Judge Scoles relies on in finding that reasonable suspicion existed "are

not specific, particularized or objective bases for suspecting criminal activity" and,

moreover, Judge Scoles fails to "identify exactly what criminal activity was suspected."

*Id.* at 6-7.

"The Fourth Amendment to the United States Constitution protects individuals

against unreasonable searches and seizures by the government."  *United States v. Zamora-*

*Lopez*, 685 F.3d 787, 789 (8th Cir. 2012).

> "A traffic stop constitutes a seizure of [a] vehicle's occupants,
> including any passengers."  *United States v. Sanchez*, 572
> F.3d 475, 478 (8th Cir. 2009), *citing Brendlin v. California*,
> 551 U.S. 249, 255-57, 127 S. Ct. 2400, 168 L. Ed. 2d 132
> (2007).  A traffic stop "must be supported by reasonable
> suspicion or probable cause."  *United States v. Houston*, 548
> F.3d 1151, 1153 (8th Cir. 2008).  "A law enforcement officer
> has reasonable suspicion when the officer is aware of
> 'particularized, objective facts which, taken together with
> rational inferences from those facts, reasonably warrant
> suspicion that a crime is being committed.'"  *Id.*

*United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012) (alteration in original).

"Whether such suspicions are reasonable is assessed from the point of view of trained law

enforcement officers based on the totality of the circumstances known to the officers at the

relevant time." *Zamora-Lopez*, 685 F.3d at 790; *see also Hollins*, 685 F.3d at 706 ("'The determination of whether probable cause,' or reasonable suspicion, 'existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'" (quoting *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999))). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citations omitted) (internal quotation marks omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277; *accord United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011).

After conducting a de novo review, the court finds that Judge Scoles correctly concluded that Deputy Kennedy had a reasonable suspicion that Defendant was engaged in criminal activity. Although Defendant objects to Judge Scoles's characterization of portions of Deputy Kennedy's testimony, Defendant does not appear to dispute that: (1) Deputy Kennedy observed Defendant traveling westbound on Highway 20 in Dubuque, Iowa, at approximately 2:30 a.m.; (2) Defendant was traveling fifteen miles per hour under the speed limit; (3) when Deputy Kennedy, who was traveling eastbound on Highway 20, turned his marked patrol car around and caught up with Defendant, Defendant slowed down even further, signaled a lane change and got behind Deputy Kennedy's patrol car in the lefthand lane; (4) Defendant then made a lawful lefthand turn onto Mile Hill Lane, a street Deputy Kennedy knew was occupied by businesses, including a mini-storage facility; (5) Deputy Kennedy was aware of a "rash of storage shed burglaries," Transcript at 11, in the Dubuque area, although he did not know whether the mini-storage facility on Mile Hill Lane had been burglarized; (6) Deputy Kennedy observed Defendant make a u-turn on Mile Hill Lane and reenter Highway 20 traveling in the same direction that he had been previously traveling; and (7) when Deputy Kennedy

turned around again to catch up with Defendant's vehicle, Defendant made another lefthand turn onto North Cascade Road. Although some of these facts, when viewed in isolation, may be consistent with innocent conduct, Deputy Kennedy could reasonably believe that further investigation was warranted under the totality of the circumstances. *See Arvizu*, 534 U.S. at 277-78 (holding that, under the "totality of the circumstances," an officer had reasonable suspicion); *United States v. Rickus*, 737 F.2d 360, 365 (3d Cir. 1984) (holding that an officer had a reasonable suspicion that criminal activity was afoot where the defendants were driving through a closed business district at 3:30 a.m., the defendants were driving fifteen to twenty miles per hour below the speed limit and the defendants turned into a residential area that "had recently been victimized by a spate of burglaries").

In his Objections, Defendant states that "[n]either the Magistrate Judge nor the government could identify exactly what criminal activity was suspected." Objections at 6-7. Although Defendant cites *United States v. Hughes*, 517 F.3d 1013 (8th Cir. 2008), in support, *Hughes* is inapposite. In *Hughes*, the Eighth Circuit Court of Appeals addressed the issue of whether an officer may conduct a *Terry* stop to investigate a completed misdemeanor crime. *Id.* at 1017. Here, Deputy Kennedy was investigating a potentially ongoing crime. Furthermore, contrary to Defendant's suggestion, Judge Scoles identified two possible crimes that Deputy Kennedy could have reasonably believed Defendant was engaged in—that is, operating while intoxicated and burglary. *See* Report and Recommendation at 11; *see also* Transcript at 13 (noting the reasons why Deputy Kennedy initiated the traffic stop). Moreover, several Courts of Appeals have held that, in the context of reasonable suspicion, an officer need not be able to identify the specific crime the officer is investigating; rather, the officer need only reasonably suspect that the individual is engaged in some kind of criminal activity. *See United States v. Guardado*, 699 F.3d 1220, 1225 (10th Cir. 2012) ("Direct evidence of a specific, particular crime is unnecessary [for an investigatory stop]."); *United States v. Pack*, 612 F.3d 341, 357 (5th

Cir. 2010) ("[T]he police do not have to observe the equivalent of direct evidence of a particular specific crime in order to detain a lawfully stopped individual to investigate where there is reasonable suspicion of criminal activity on his part.").

Thus, for the reasons more fully stated in the Report and Recommendation, the court finds that there was a lawful basis for the traffic stop and, consequently, there was no Fourth Amendment violation. Accordingly, the court shall overrule Defendant's objection on this ground.

## B. Public Safety Exception

### 1. Defendant's arguments

Defendant argues that Judge Scoles erred in finding "that the 'public safety exception' to the requirement of *Miranda* applies to Defendant's responses to [Deputy] Kennedy's 'express questioning.'" Objections at 7. At issue is the following exchange, which occurred after Deputy Kennedy had handcuffed Defendant, searched Defendant's person incident to arrest and placed Defendant in the patrol car[1]:

| | |
|---|---|
| Kennedy: | Are you yelling at me? |
| Defendant: | Ya. |
| Kennedy: | What's up? |
| Defendant: | There's a dude coming down here to get my car. |
| Kennedy: | Rick? |
| Defendant: | Ya. |

---

[1] There was a second exchange between Deputy Kennedy and Defendant after Deputy Kennedy retrieved the backpack from Defendant's vehicle and reacted to a strong odor emanating from the backpack. *See* Report and Recommendation at 7-8 (providing a transcript of the second exchange). In the Report and Recommendation, Judge Scoles finds that the public safety exception does not apply to this second exchange and, consequently, Defendant's responses to Deputy Kennedy's questions are inadmissible. Judge Scoles notes, however, that "Defendant's volunteered statements prior to [Deputy] Kennedy's questions are admissible." *Id*. at 17. Neither Defendant nor the government object to this portion of the Report and Recommendation. Accordingly, the court shall adopt Judge Scoles's recommendation to grant in part the Motion.

| | |
|---|---|
| Kennedy: | Okay, 'cause the phone, your phone . . . I was trying to hang it up and it says someone's still connected. [showing [D]efendant] Do I take it to mean he's still on the line there? |
| Defendant: | You might want to wait for him to get here. |
| Kennedy: | I'm just going to pull the car ahead. |
| Defendant: | No, seriously, he left something in my car, man. |
| Kennedy: | Is there meth in there? |
| Defendant: | No, there's no meth. |
| Kennedy: | Alright, what's in there? |
| Defendant: | He left something, he left . . . there's a black bag on the floorboard of my car that he left in there. That's what I was taking to him. |
| Kennedy: | Okay, what's in it? |
| Defendant: | I really don't know. |
| Kennedy: | Will it hurt me? |
| Defendant: | It shouldn't. I didn't smell nothin' out of it or feel anything out of it. |
| Kennedy: | Okay. |
| Defendant: | He left it in my . . . he was over there with his girlfriend at Heritage Pond. |
| Kennedy: | Okay. |
| Defendant: | And he just called me a little bit ago, texted me actually, and asked me if I could bring him his book bag. I know there's a can of ether in there. I'm not sure what else is in there. |
| Kennedy: | Well, does he have a one-pot in there? |
| Defendant: | No, no, no, there shouldn't be no lab in there. He said there was just materials in there. |
| Kennedy: | Well, I appreciate the heads-up. What's your friend's name? I'll find out in a minute when I get there. |

<div style="margin-left: 3em;">
Defendant: Tuttle.

Kennedy: Rick Tuttle?  Okay.
</div>

Report and Recommendation at 5-7.  It is undisputed that Deputy Kennedy did not read Defendant his *Miranda* rights prior to this exchange.  In the Report and Recommendation, Judge Scoles finds that, although Defendant's statements were unwarned, the public safety exception applies and, thus, suppression is not warranted.

In his Objections, Defendant argues that the public safety exception is inapplicable because: (1) the Eighth Circuit has only applied the public safety exception in the context of "weapons, specifically guns," Objections at 7; (2) Deputy Kennedy had no reason to believe that anything in Defendant's vehicle posed a public safety hazard; (3) Deputy Kennedy's initial questions, including "Is there meth in there?," were not aimed at obtaining information critical to preventing a public safety hazard; and (4) Deputy Kennedy should have ceased questioning after Defendant stated that he did not believe anything in the bag would harm Deputy Kennedy.

  **2.** *Applicable law*

In *New York v. Quarles*, 467 U.S. 649 (1984), the United States Supreme Court held that "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence."  *Id.* at 655; *accord United States v. Watters*, 572 F.3d 479, 482 (8th Cir. 2009).  "Under the public safety exception, a suspect's answer may be admitted into evidence if it was obtained in response to a question asked in furtherance of public safety and not designed solely to solicit testimonial evidence, even if *Miranda* warnings had not yet been given."  *United States v. Everman*, 528 F.3d 570, 572 (8th Cir. 2008); *accord Watters*, 572 F.3d at 482.  "[P]rotection of the public safety includes protection of the police officers themselves."  *United States v. Liddell*, 517 F.3d 1007, 1009 (8th Cir. 2008).

"The [public safety] exception does not depend upon the questioning officers' subjective motivation.  Rather, it is judged under an objective standard and applies when

police officers ask questions reasonably prompted by a concern for the public safety."
*Everman*, 528 F.3d at 572 (quoting *Liddell*, 517 F.3d at 1009) (internal quotation marks
omitted); *see also Quarles*, 467 U.S. at 656 (noting that "the availability of [the public
safety] exception does not depend upon the motivation of the individual officers
involved"). "Because this is an objective standard, and because police officers must react
spontaneously to situations posing a threat to public safety, the public safety exception does
not turn on the specific form of questions asked." *Liddell*, 517 F.3d at 1009 n.2.

### 3.   *Discussion*

First, the court finds that Defendant's argument that the public safety exception is
limited to the context of firearms is without merit. In *United States v. Luker*, 395 F.3d
830 (8th Cir. 2005), the Eighth Circuit held that the public safety exception was applicable
where an officer, without first advising the defendant of his *Miranda* rights, asked the
defendant "if there was anything in [the defendant's] vehicle that shouldn't be there or that
[the officers] should know about." *Id.* at 832. The Eighth Circuit held that the
defendant's response was admissible because "[t]he officers were aware of [the
defendant's] methamphetamine use and were concerned about needles or substances
associated with such use in the car." *Id.* at 833-34. Although the defendant responded
that there was a shotgun in the car, the officer's question was prompted by a concern that
there was drug paraphernalia in the car. *Id.* at 832, 833-34; *see also Liddell*, 517 F.3d at
1009-10 ("Our prior cases recognized that the risk of police officers being injured by the
mishandling of unknown firearms *or drug paraphernalia* provides a sufficient public safety
basis to ask a suspect who has been arrested and secured whether there are weapons or
contraband in a car or apartment that the police are about to search." (emphasis added)).
Thus, the Eighth Circuit has extended the public safety exception beyond the context of
firearms.

Moreover, the Eighth Circuit has recognized the public safety hazard posed by the
manufacture of methamphetamine. *See United States v. Ellefson*, 419 F.3d 859, 866 n.4

(8th Cir. 2005) ("[T]he manufacture of methamphetamine is an inherently dangerous activity that creates substantial risks to public health and safety."); *United States v. Walsh*, 299 F.3d 729, 734 (8th Cir. 2002) (holding that there were exigent circumstances justifying the officers' warrantless search of a storage shed where an officer smelled ether and saw equipment that "suggested an on-going manufacture in the shed" and noting that "[t]he potential hazards of methamphetamine manufacture are well documented"); *see also United States v. Bute*, 43 F.3d 531, 544 n.2 (10th Cir. 1994) (discussing the "hazard" posed by the chemicals used in the manufacture of methamphetamine). Given these dangers, the court finds that the public safety exception is applicable where an officer is concerned about a possible methamphetamine lab. *See United States v. King*, 182 F. App'x 88, 91 (3d Cir. 2006) (holding that there was no *Miranda* violation where officers' questions were aimed at "obtain[ing] safety information . . . before law enforcement personnel entered the potentially dangerous clandestine methamphetamine laboratory" (quoting *United States v. King*, 366 F. Supp. 2d 265, 274 (E.D. Pa. 2005)).

Second, the court disagrees with Defendant's suggestion that Deputy Kennedy lacked an objective basis for believing that there was a potential public safety hazard. Deputy Kennedy first observed Defendant's vehicle driving slowly at night. After Deputy Kennedy ran a check on Defendant's driver's license, he learned that Defendant had an outstanding warrant out of Clayton County for manufacturing methamphetamine.[2] When

---

[2] At the detention hearing, Deputy Kennedy testified initially that Dispatch had informed him that the warrant was for manufacturing methamphetamine. Transcript at 16. However, on cross-examination, defense counsel asked Deputy Kennedy whether Dispatch told him the specific charge underlying the warrant or whether Dispatch just stated that there was a warrant for Defendant's arrest out of Clayton County. *Id.* at 31. Deputy Kennedy responded, "I think they just said a warrant out of Clayton County. I tried to listen to it on the video, and I just couldn't . . . make it out." *Id.* On redirect, counsel for the government asked Deputy Kennedy what information Dispatch typically provides an officer when there is "a warrant for someone's arrest." *Id.* at 43. Deputy Kennedy responded, "They would normally tell you what it was for and whatever information they observed." *Id.* Counsel for the government then asked, "So regardless of whether you

(continued...)

Deputy Kennedy did a pat-down of Defendant's person, he found a methamphetamine pipe in Defendant's front pocket. When Deputy Kennedy told Defendant that he was going to move Defendant's vehicle, Defendant stated that someone was coming to get his vehicle and that Deputy Kennedy "might want to wait for [that person] to get [there]." Report and Recommendation at 6. When Deputy Kennedy stated, "I'm just going to pull the car ahead," Defendant stated, "No, seriously, he left something in my car." *Id.* Based on these facts, the court finds that Deputy Kennedy had a legitimate public safety concern—specifically, that Defendant had an ongoing methamphetamine lab in his vehicle or, at the very least, he had dangerous drug paraphernalia or substances in his vehicle. *See Luker*, 395 F.3d at 832, 833-34 (holding that the public safety exception applied when the arresting officers, who were aware of the defendant's history of methamphetamine use, asked the defendant before searching his vehicle whether there was anything in it that was not supposed to be there or that could hurt them).

Third, Defendant argues that Deputy Kennedy's specific questions were not aimed at obtaining information critical to public safety. Defendant takes particular exception to Deputy Kennedy's initial question, "Is there meth in there?," Report and Recommendation at 6. Defendant argues that the question was not prompted by a public safety concern because "[m]ethamphetamine in its typical form would not pose an immediate danger to

---

[2](...continued)

could hear it clearly on the tape or not, what's your recollection of what Dispatch told you about the arrest warrant for [Defendant]?" *Id.* Deputy Kennedy responded, "My recollection . . . is that they advised that it was a warrant out of Clayton County and that it was for manufacturing methamphetamine." *Id.*

Judge Scoles did not make a factual finding in the Report and Recommendation as to whether Deputy Kennedy knew that the warrant was for manufacturing methamphetamine. After reviewing the record, the court finds that Deputy Kennedy credibly testified that Dispatch did, in fact, inform him of the specific charge underlying the warrant. However, the court notes that, even if Deputy Kennedy were not aware that the warrant was for manufacturing methamphetamine, the court would nevertheless find that the public safety exception applies based on the other facts identified.

[Deputy] Kennedy or the public." Objections at 8. The court finds that Deputy Kennedy's questions were asked "in furtherance of public safety and not designed solely to solicit testimonial evidence." *Everman*, 528 F.3d at 572. Although Deputy Kennedy's initial question, "Is there meth in there?,"[3] may have been broad, "the public safety exception does not turn on the specific form of questions asked." *Liddell*, 517 F.3d at 1009 n.2. Deputy Kennedy had an objective basis for believing that Defendant may have had a methamphetamine lab in his vehicle, or at least the substances used to manufacture methamphetamine, and Deputy Kennedy's line of questioning was sufficiently directed at determining whether such a public safety hazard existed. Of particular note is that, prior to the above exchange, Deputy Kennedy told Defendant that he was going to "take a quick look through" Defendant's car. Report and Recommendation at 5. If Deputy Kennedy wished to know whether there was methamphetamine in the car, he could have discovered that fact without asking Defendant. Thus, after reviewing the transcript, the court finds that Deputy Kennedy's questions were reasonably tailored to obtaining information critical to the public safety and that the questions were not aimed solely at obtaining testimonial evidence.

Fourth, Defendant contends that Deputy Kennedy should have stopped questioning him after he denied knowing what was in the bag because, "[e]ven if there was a ghost of a suspicion that the car contained something dangerous," Deputy Kennedy's suspicions should have been dispelled at that point. Objections at 9. The court finds that such an argument is without merit. Deputy Kennedy did not engage in a protracted line of questioning—he asked Defendant what was in the bag and, after Defendant stated that he did not know, Deputy Kennedy asked whether it would hurt him. Deputy Kennedy did not ask another question until Defendant volunteered that there was a can of ether in the bag.

---

[3] The court notes that Defendant's response to this question was not particularly incriminatory—Defendant merely responded that he did not have methamphetamine in the vehicle.

As Judge Scoles notes in the Report and Recommendation, "[t]he conversation took just less than two minutes." Report and Recommendation at 7.

Thus, in light of the foregoing and for the reasons more fully stated in the Report and Recommendation, the court finds that the public safety exception applies and, accordingly, suppression of Defendant's statements is not warranted.[4] The court shall therefore overrule Defendant's objection on this ground.

## V. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 31) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 27) is **ADOPTED**; and

(3) The Motion (docket no. 13) is **GRANTED IN PART** and **DENIED IN PART**.

**DATED** this 11th day of February, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[4] The court notes that, even if the public safety exception were not applicable and, consequently, there was a *Miranda* violation, suppression of the physical evidence obtained from Defendant's car would not be the appropriate remedy. *See United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion) (holding that a *Miranda* violation does not "require[] suppression of the physical fruits of the suspect's unwarned but voluntary statements"); *see also United States v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012) ("Even if we assume a *Miranda* violation, suppression of the resulting physical evidence is not the appropriate remedy."); *United States v. Morse*, 569 F.3d 882, 884 (8th Cir. 2009) (discussing *Patane*). Rather, the court would only suppress Defendant's unwarned statements.